UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LEGACY EQUITY ADVISORS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:23-cv-00979-D |
| AT&T INC., | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT AT&T INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION TO DISMISS</u>**

**NORTON ROSE FULBRIGHT US LLP**

Richard S. Krumholz
richard.krumholz@nortonrosefulbright.com
State Bar No. 00784425
Shauna J. Clark
shauna.clark@nortonrosefulbright.com
State Bar No. 00790977
Heather L. Sherrod
heather.sherrod@nortonrosefulbright.com
State Bar No. 24083836
Andrew Yeh
andrew.yeh@nortonrosefulbright.com
State Bar No. 24098645
Joseph D. Piorkowski
joey.piorkowski@nortonrosefulbright.com
State Bar No. 24091426

2200 Ross Ave., Ste. 3600
Dallas, TX 75201
Telephone: (214) 855-8061
Facsimile: (214) 855-8200

*Attorneys for Defendant AT&T Inc.*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1

FACTUAL BACKGROUND PER THE COMPLAINT ................................ 4

ARGUMENTS AND AUTHORITIES ........................................................ 10

I.  Standard of Review ................................................................................ 10

II.  Legacy's Complaint Does Not Plausibly Allege a Section 1981 Claim. ............. 11

    A.  Legacy Fails to Plausibly Plead an Intent to Discriminate on the Basis of Race. ............................................................................................... 12

        1.  Cricket Wireless .................................................................... 14

        2.  The 88 Retail Stores ............................................................. 16

        3.  Puerto Rico Wireless Division............................................ 17

        4.  DIRECTV and Other Non-Core Assets ............................. 18

    B.  Legacy Fails to Plausibly Plead a Contractual Right Related to the Non-Core Assets ............................................................................. 20

III.  Legacy's Cricket Wireless and Puerto Rico Wireless Division Claims Are Barred by the Applicable Statute of Limitations. ............................. 22

CONCLUSION AND PRAYER ................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abrams v. Baker Hughes Inc.*,
    292 F.3d 424 (5th Cir. 2002) .................................................................................. 10

*Arguello v. Conoco, Inc.*,
    330 F.3d 355 (5th Cir. 2003) .................................................................................. 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................ 10, 11, 15, 19

*In re Baker Hughes Sec. Litig.*,
    136 F. Supp. 2d 630 (S.D. Tex. 2001) ................................................................... 10

*Bekkem v. Wilkie*,
    915 F.3d 1258 (10th Cir. 2019) ................................................................. 12, 13, 19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................ 10, 11, 15, 17

*Bellows v. Amoco Oil Co.*,
    118 F.3d 268 (5th Cir. 1997) ............................................................................ 11, 12

*Bernard v. ATC Vancom*,
    No. Civ.A.3:04-CV-1820-D, 2005 WL 139110 (N.D. Tex. Jan. 20,
    2005) ........................................................................................................................ 3

*Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*,
    869 F.3d 381 (5th Cir. 2017) .................................................................................. 12

*Bolden v. Amer. Airlines, Inc.*,
    No. 4:21-cv-00603-P, 2021 WL 3419682 (N.D. Tex. 2021) .............................. 14, 16

*Buenrostro v. Flight Safety Int'l, Inc.*,
    C.A. No. SA-99-CA-0819, 2001 WL 674171 (W.D. Tex. Mar. 2, 2001) ................ 10

*Byers v. Dall. Morning News*,
    209 F.3d 419 (5th Cir. 2000) ............................................................................... 3, 22

*Calvin v. Harrington*,
    No. 3:19-CV-02294-G-BT, 2021 WL 932051 (N.D. Tex. Feb. 22,
    2021) ...................................................................................................................... 17

*Cinel v. Connick,*
   15 F.3d 1338 (5th Cir. 1994) ........................................................................ 4

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media,*
   140 S. Ct. 1009 (2020) ............................................................................... 11

*Doe #1 v. Am. Fed'n of Gov't Employees,*
   554 F. Supp. 3d 75 (D.D.C. 2021) .............................................................. 12

*Escuadra v. Geovera Specialty Ins.,*
   739 F. Supp. 2d 967 (E.D. Tex. 2010) ........................................................ 10

*Funk v. Stryker Corp.,*
   631 F.3d 777 (5th Cir. 2011) ....................................................................... 4

*Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania,*
   458 U.S. 375 (1982) ................................................................................... 11

*Hager v. Arkansas Dep't of Health,*
   735 F.3d 1009 (8th Cir. 2013) .................................................................... 12

*Jackson v. Cal–Western Packaging Corp.,*
   602 F.3d 374 (5th Cir. 2010) ................................................................. 14, 15

*Jacobs v. Ballard Expl. Corp.,*
   No. 1:18-CV-00469, 2019 WL 1715830 (E.D. Tex. Jan. 17, 2019) ......... 21, 22

*Jones v. R.R. Donnelley & Sons Co.,*
   541 U.S. 369 (2004) ................................................................................... 22

*Kirkland-Hudson v. Mount Vernon City Sch. Dist.,*
   No. 21-CV-695 (KMK), 2023 WL 2691622 (S.D.N.Y. Mar. 29, 2023) ......... 15

*Martinez v. Katy Indep. Sch. Dist.,*
   No. H–11–547, 2012 WL 6737497 (S.D. Tex. Dec. 7, 2012) ...................... 13

*McCrea v. Saks, Inc.,*
   No. CIV. A. 00-CV-1936, 2000 WL 1912726 (E.D. Pa. Dec. 22, 2000) ...... 21

*Nicholson v. A.H.D. Houston, Inc.,*
   No. 4:21-CV-02624, 2022 WL 4543201 (S.D. Tex. Sept. 28, 2022) ...... 3, 22, 23

*Nixon El v. Gen. Motors Co.,*
   No. 4:20-CV-471-A, 2020 WL 3848099 (N.D. Tex. July 8, 2020) ............... 19

*Pathria v. Serwer,*
   599 F. App'x 176 (5th Cir. 2015) ........................................................... 15, 16

*Pena v. Dallas Police Ass'n,*
No. 3:22-CV-0987-N-BH, 2023 WL 2144296 (N.D. Tex. Jan. 17,
2023) .................................................................................................... 14, 18

*R2 Invs. LDC v. Phillips,*
401 F.3d 638 (5th Cir. 2005) .............................................................. 10

*Ramirez v. City of San Antonio,*
312 F.3d 178 (5th Cir. 2002) .............................................................. 23

*Rountree v. Dyson,*
892 F.3d 681 (5th Cir. 2018) ......................................................... 12, 13

*Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.,*
365 F.3d 353 (5th Cir. 2004) .............................................................. 10

*Spotts v. U.S.,*
613 F.3d 559 (5th Cir. 2010) .............................................................. 23

*Sterling v. Kazmierczak,*
983 F. Supp. 1186 (N.D. Ill. 1997) ..................................................... 21

*T & S Serv. Assoc., Inc. v. Crenson,*
666 F.2d 722 (1st Cir. 1981) .............................................................. 18

*Vinson v. City of Charlotte, N. Carolina,*
No. 306CV353-MU, 2007 WL 1198940 (W.D.N.C. Apr. 19, 2007) ...................... 19

*Waller v. Escamilla,*
No. H-22-1156, 2022 WL 2479161 (S.D. Tex. Jul 6, 2022) ................................... 13

*Walls v. Panetta,*
No. 5:12-CV-52, 2012 WL 6086226 (E.D. Tex. Dec. 6, 2012) ................................ 15

*Whitehead v. Chevron USA, Inc.,*
No. CIV.A. 3:03-CV-0956R, 2004 WL 594094 (N.D. Tex. Mar. 24,
2004) .................................................................................................... 23

*Ziyadat v. Diamondrock Hosp. Co.,*
3 F.4th 1291 (11th Cir. 2021) .............................................................. 12

**Rules and Statutes**

42 U.S.C. § 1981(a) .................................................................................. 20

Fed. R. Civ. P. 12 .................................................................................... 3

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 10, 14

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
## MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant AT&T Inc. moves to dismiss ("Motion") the Original Complaint ("Complaint") filed by Plaintiff Legacy Equity Advisors, LLC ("Plaintiff" or "Legacy") and respectfully submits this Memorandum to the Court in support of its Motion.

## INTRODUCTION

Legacy's Complaint accusing AT&T of racist business practices is as offensive as it is baseless. AT&T has been repeatedly recognized as a champion of diversity and inclusion by third-party organizations such as DiversityInc, Corporate Equality Index, National Business Inclusion Consortium, Latino Metro, American Indian Science and Engineering Society, and the National Organization on Disability.[1]  In 2020, AT&T spent $3.1 billion with Black-owned suppliers.[2] In 2022, AT&T spent $16.3 billion with minority-owned companies, which represented 26.3% of its overall procurement spend.[3] And in 2023, DiversityInc ranked AT&T as the #1 company for supplier diversity and recognized AT&T as one of its Hall of Fame companies.[4]

---

[1] *See* "DE&I Awards & Recognition" *available at*
https://about.att.com/ecms/dam/snrdocs/Diversity/diversity-equity-and-inclusion-awards.pdf (last visited June 25, 2023).

[2] *See* "AT&T Exceeds $3 Billion Spending Commitment for Black-owned Business." January 29, 2021, *available at* https://about.att.com/newsroom/2021/black_owned_businesses_commitment.html (last visited June 25, 2023).

[3] *See* "AT&T 2022 Sustainability Summary" *available at*
https://about.att.com/ecms/dam/csr/2023/ESG/ATT-Sustainability-Summary.pdf (last visited June 25, 2023).

[4] *See* "Diversity is the Strongest Connection" *available at*
https://about.att.com/sites/supplier_diversity (last visited June 25, 2023); "Hall of Fame: AT&T" *available at* https://www.fair360.com/company/att/; "Hall of Fame Companies" *available at*

Despite AT&T's stalwart commitment to diversity, Legacy speculates that AT&T refused to sell it certain assets because of its African American ownership. But the Complaint pleads no facts plausibly supporting a valid Section 1981 claim. Instead, Legacy's claims rest on conclusory, threadbare allegations that AT&T intentionally discriminated against Legacy by:

(1)    not accepting Legacy's unsolicited bid to buy **Cricket Wireless**, an asset that wasn't for sale and is still owned by AT&T to this day;

(2)    not inviting Legacy to bid on "**Non-Core Assets**" that AT&T sold to others, including those related to AT&T's Puerto Rico Wireless Division,[5] DIRECTV, Warner Media, and others; and

(3)    not completing a potential sale of **88 wireless retail stores** to Legacy after Legacy pulled itself out of the running (the "**88 Retail Stores**").

According to Legacy, Section 1981 requires defendants to accept minority-owned companies' unsolicited bids to buy multi-billion-dollar assets, to actively invite any allegedly well-financed minority-owned companies to the negotiating table even though they have no experience in the industry, and—when they *are* invited—to take care not to offer terms that might lead those companies to back out of negotiations.

Section 1981 does not work like this as a matter of law. And Legacy's allegations do not plausibly support a 1981 claim concerning any of these assets.

The Complaint does not plausibly allege that Legacy was similarly situated to the buyers of any of the assets AT&T decided to sell, that AT&T breached any legal

---

[5] https://www.fair360.com/top-50-list/hall-of-fame-companies/#2023-top-companies-for-supplier-diversity (last visited June 25, 2023).

[5] Legacy's Complaint misidentifies AT&T's Puerto Rico wireless operations as a "division" of the company. *See* Complaint ¶¶ 67, 68. However, AT&T uses Legacy's term, "Puerto Rico Wireless Division" in this Motion when referring to its Puerto Rico wireless operations to avoid confusion.

obligations to Legacy, or that AT&T decisionmakers acted with any racial intent, let alone that racism was the but-for cause of any of Legacy's alleged injuries. Additionally, the Cricket Wireless claim fails because Legacy does not and cannot allege that AT&T sold this business to **anyone**, thus plainly negating any plausible inference that AT&T refused to contract with Legacy on the basis of race or was the but-for cause of any injury. The Non-Core Assets claim fails because Legacy alleges no facts that it was qualified to purchase these assets, had any legal right to participate in the bidding process, or what it was willing or able to bid on these assets. And the 88 Retail Stores claim fails because AT&T admittedly **did** work with Legacy on a potential deal, before Legacy itself backed out, thus negating any claim of intentional discrimination. The allegations come nowhere close to pleading a valid claim.

Separately, Legacy's Cricket Wireless and Puerto Rico Wireless Division claims are barred by the applicable two-year statute of limitations based on the allegations in the Complaint and the Rule 12 record.[6]  This suit was filed in 2023, yet:

- Legacy's purported Cricket Wireless claims accrued by the end of April, 2019 (Complaint ¶¶ 34, 42); and

- Legacy's purported Puerto Rico Wireless Division claims accrued by October 2019. (See Ex. A-1, App. 65 (AT&T 10-K for fiscal year ended

---

[6] For the reasons discussed below, the two-year statute of limitations applies to all of Legacy's claims. *Nicholson v. A.H.D. Houston, Inc.*, No. 4:21-CV-02624, 2022 WL 4543201, at *4 (S.D. Tex. Sept. 28, 2022); *Byers v. Dall. Morning News*, 209 F.3d 419, 424 (5th Cir. 2000).

**DEFENDANT AT&T INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**     **PAGE 3**

12/31/2019 at 91); Ex. A-2, App. 325 (Liberty Latin America Ltd. 10-K for fiscal year ended 12/31/2019 at II-5)).[7]

Accordingly, this suit has no merit and should be dismissed in its entirety.

## <u>FACTUAL BACKGROUND PER THE COMPLAINT[8]</u>

According to the Complaint, Legacy is a Dallas-based private equity firm owned by Marcellus Taylor, an African American man who has spent his career in finance. Complaint ¶¶ 18, 19. Legacy does not allege that Taylor has any experience in the telecommunications or media industries or that, prior to March 2019, Taylor had any interactions with AT&T. Nor does Legacy plead that it has any experience owning or operating telecommunications-related businesses.

AT&T is one of the leading telecommunications service providers in the country. Complaint ¶ 22.

### The Hypothetical Cricket Wireless Opportunity

Legacy contends that in March 2019, Taylor approached AT&T's then-CFO John Stephens to submit an unsolicited $4.9 billion bid to acquire a majority stake in certain unspecified Cricket Wireless assets. Complaint ¶ 34. Not only does Legacy

---

[7] While plaintiffs must normally "plead themselves out of court" for a case to be dismissed based upon a limitations defense, see *Bernard v. ATC Vancom*, No. Civ.A.3:04-CV-1820-D, 2005 WL 139110 at *3 (N.D. Tex. Jan. 20, 2005), AT&T's judicially noticeable Form 10-K is part of the Rule 12 record and conclusively establishes that Legacy knew or should have known that any alleged injury it related with this sale accrued in 2019.

[8] In addition to the pleadings, the Court can consider matters of public record. *See Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) ("In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record."); *see also Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (considering publicly available documents and transcripts produced by the FDA). AT&T has cited various public SEC filings and websites due to the inflammatory nature of Plaintiff's allegations and to show the substance and timing of what Legacy knew or should have known based on AT&T's public disclosures. The legal grounds for this motion, however, are based on the absence of well-pled facts supporting a plausible claim, and the expiration of applicable limitations periods.

fail to identify what specific Cricket Wireless assets it offered to purchase (let alone plead any facts showing that $4.9 billion would be a reasonable price for these undefined assets), the Complaint does not allege that AT&T ever expressed any interest in selling Cricket Wireless (it did not) or, more importantly, that AT&T ever sold Cricket Wireless to another entity. In fact, AT&T still owns this business and these assets.[9]

Granted, the Complaint alleges that Steve McGaw[10] made certain race-related comments (Complaint ¶ 38), but Legacy admits it did not believe there was any discriminatory intent when the comment was allegedly made (Complaint ¶ 40). Further, Legacy does not allege that McGaw had any decision-making authority over any hypothetical Cricket Wireless transaction, or the disposition of any other AT&T assets. Quite the opposite, Legacy asserts that one month after it submitted its unsolicited bid for Cricket Wireless, AT&T informed Taylor that a **different** person— AT&T then-CEO Randall Stephenson—rejected Legacy's bid. Complaint ¶ 42. The Complaint does not assert that Stephenson—the alleged decision-maker—harbored any discriminatory animus or intent toward Legacy.

The Complaint also fails to allege that AT&T treated a similarly situated non-minority-owned business more favorably during any bidding or contracting process (of which there was none), much less that any discriminatory conduct was the but-for cause of Legacy's "bid" being rejected.

---

[9] *See* Ex. 6, App. 1737 (10-K for fiscal year ended 12/31/22 at Exhibit 21).
[10] McGaw's alleged statement is notably undated. Complaint ¶ 38.

**DEFENDANT AT&T INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**      **PAGE 5**

**Legacy Backs Out Of Buying 88 Retail Stores**

According to the Complaint, about a month after Legacy's out-of-the-blue, unsolicited March 25, 2019, bid for Cricket Wireless was rejected, AT&T gave Legacy an opportunity to purchase the 88 Retail Stores. Complaint ¶¶ 34, 42, 43. Legacy alleges that it engaged in negotiations and a due diligence process with AT&T after this April or early May 2019 conversation. Complaint ¶¶ 43, 48-59. During this process, in an undated conversation, Legacy alleges that AT&T's Chris Cass told Taylor that "he viewed African American-owned firms as not being able to secure financing," and "given his experience with African American-owned firms, he questioned whether Legacy would be able to close the transaction." Complaint ¶¶ 53, 54. Like McGaw's alleged comment, Legacy claims it did not understand Cass's alleged statement to be discriminatory at the time. Complaint ¶ 55.

Legacy concedes that it could not complete the transaction and had to withdraw from negotiations. Complaint ¶ 59. Legacy claims it later learned that AT&T sold the 88 Retail Stores to Blue Link Wireless LLC ("Blue Link"), **allegedly** owned in some manner (that was also not identified in the Complaint) by AT&T's former CEO Stephenson. Complaint ¶ 64. Legacy does not plead any facts showing that it was similarly situated to Blue Link, any information related to Blue Link's bid to acquire the stores, whether Legacy made a better offer than Blue Link, or any limitations in hiring then-current AT&T employees was motivated by some sort of racial animus or desire to block the sale. Nor does Legacy allege that, but-for some

sort of alleged discriminatory conduct, the outcome would have been different. Complaint ¶¶ 64-65.

### Legacy's Conclusory Allegations Regarding Non-Core Assets

The Complaint also includes bald allegations about Legacy's purported desire to purchase other Non-Core Assets from AT&T. These assets include the (1) Puerto Rico Wireless Division, (2) DIRECTV, and (3) 10 other divested assets. Legacy's factual claims related to these Non-Core Assets are addressed separately below, but noticeably absent from **all** of them are any facts showing:

- That Legacy actually submitted a bid for the Non-Core Assets;

- The amounts and terms of any bids that Legacy would have submitted if given the opportunity to bid on the Non-Core Assets;

- The terms of any other bids for the Non-Core Assets by other individuals or entities, or that a bid by Legacy would have been more favorable than any other bids;

- That Legacy was qualified (in terms of experience and financial wherewithal) to purchase these Non-Core Assets, including that Legacy had experience in the gaming, advertising, satellite television, media, or wireless industries—or that it communicated any experience operating any business in Puerto Rico or navigating Puerto Rico's governmental regulations;

- That Legacy was more qualified than—or in any way similarly situated with—the entities that purchased the Non-Core Assets;

- Any legally cognizable reason that Legacy should have been included in the sale processes for these Non-Core Assets other than its own desire, given AT&T had no duty to do so;

- That AT&T made any racially insensitive comments or otherwise exhibited any racial animus toward Legacy in connection with these Non-Core Assets; or

- That, had Legacy not been a minority or African American-owned business, the outcomes related to these assets would have been different.

### (1) Additional Deficiencies in Puerto Rico Wireless Division Allegations

The Complaint asserts that Legacy was not given a chance to bid on AT&T's Puerto Rico Wireless Division, which AT&T sold in October 2020 to Liberty Media Corporation ("Liberty Media"), the largest wireless telecommunications company in Puerto Rico.[11] Complaint ¶ 66. Legacy alleges that Liberty Media is owned by John Malone, a long-time industry colleague of Stephenson. Complaint ¶ 66. Legacy does not assert that it ever communicated to AT&T that it was **specifically** interested in purchasing the Puerto Rico Wireless Division, or that it was qualified to purchase the asset—let alone more qualified than Liberty Media or able or willing to make a superior offer for this business. Legacy nonetheless claims that AT&T's failure to solicit a bid from Legacy amounts to a valid Section 1981 claim.

### (2) Additional Deficiencies in Legacy's DIRECTV Allegations

Legacy suggests that it did not submit a bid for DIRECTV because AT&T did not encourage it to do so. Complaint ¶ 45. AT&T and private equity firm TPG Capital created a new entity to own and operate DIRECTV. *See* Ex. A-3, App. 1113 (AT&T 10-K for the period ended December 31, 2021 at 57). Of course, this joint venture was

---

[11] As of October 28, 2019, Legacy knew or should have known from public filings that AT&T sold its Puerto Rico Wireless Division to Liberty Media. Ex. A-8, App. 1822 (AT&T 8-K published 10/28/2019 at Item 8.01); Ex. A-2, App. 325 (Liberty Latin America Ltd. 10-K for fiscal year ended 12/31/2019 at I-5, II-5).

widely known and publicized, as was the importance of finding an experienced, qualified **partner** for this venture.[12]

### (3) Additional Pleading Failures Concerning Other Divested Non-Core Assets

In a final, catch-all stretch to capture other AT&T asset divestures, the Complaint broadly alleges that AT&T shut Legacy out from purchasing "at least 10 other divested assets," including (1) a tranche of 100 AT&T retail stores; (2) a tranche of 188 AT&T retail stores; (3) "Xandra Advertising" [sic]; (4) a group of 31 data centers; (5) Playdemic Mobile Gaming; (6) Vrio Operations; (7) AT&T Government Solutions; (8) AT&T St. Louis Real Estate; (9) AT&T Downtown Detroit; and (10) AT&T Miami Beach Site. Complaint ¶ 71. Without any specific allegations or factual support, Legacy contends that AT&T sold these assets to white-owned companies that were less qualified than Legacy, and on less favorable terms than Legacy would have offered. Complaint ¶ 74. As with the other Non-Core Assets, however, Legacy does not allege any facts from which it can be plausibly inferred that AT&T excluded Legacy from bidding and awarded these assets to another bidder on the basis of race or that AT&T would have sold any of these assets to Legacy but for race.

Legacy also does not support its conclusory allegation that the ultimate purchasers were less qualified. Nor can it. For example, AT&T sold its Xandr advertising assets to Microsoft.[13] Legacy does not venture to allege that it is similarly

---

[12] *See* Ex. A-4, App. 1398 (AT&T 10-Q for the period ended March 31, 2021) at 23 ("On February 25, 2021, we signed an agreement with TPG Capital (TPG) to form a new company named DIRECTV (New DTV), which will be jointly governed by a board with representation from both AT&T and TPG[.]").
[13] Ex. A-3, App. 1142 (10-K for fiscal year ended 12/31/21 at 85).

situated to Microsoft or that Microsoft is less qualified. Legacy also does not allege that it has any experience in the advertising industry sufficient to make it a suitable buyer. Similarly, Legacy knew or should have known that AT&T sold Playdemic Mobile Gaming to Electronic Arts ("EA"), the world's leading gaming company.[14] Again, Legacy does not allege any facts that it is similarly situated to EA with respect to the acquisition of a gaming company, or that Legacy has any experience in the gaming industry.

## **ARGUMENTS AND AUTHORITIES**

### I.   **Standard of Review**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to be plausible, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Dismissal is proper if the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See In re Baker Hughes Sec. Litig.*, 136 F. Supp. 2d 630, 636 (S.D. Tex. 2001) *aff'd sub nom. Abrams v. Baker Hughes Inc.*, 292 F.3d 424 (5th Cir. 2002); *see also Escuadra v. Geovera Specialty Ins.*, 739 F. Supp. 2d 967, 977 (E.D. Tex. 2010). A court should not "strain to find inferences favorable to the plaintiff[]" and should "not accept 'conclusory allegations, unwarranted

---

[14] Ex. A-6, App. 1549 (10-K for fiscal year ended 12/31/2022 at 65); Ex. A-7, App. 1782 (10-Q for the period ended June 30, 2021 at 28).

deductions, or legal conclusions.'" *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). Rather, Rule 12(b)(6) "allows a court to eliminate actions that are fatally flawed in their legal premises and destined to fail, thus sparing the litigants the burdens of unnecessary pretrial and trial activity." *Buenrostro v. Flight Safety Int'l, Inc.*, C.A. No. SA-99-CA-0819, 2001 WL 674171, \*3 (W.D. Tex. Mar. 2, 2001).

Here, Legacy has proffered nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The Complaint therefore does not contain sufficient facts to survive a motion to dismiss. *See id*.

## II.   Legacy's Complaint Does Not Plausibly Allege a Section 1981 Claim.

To establish a Section 1981 claim for contractual discrimination, a plaintiff must sufficiently plead facts that (1) it is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute. *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997). To survive a motion to dismiss on these elements, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Courts may consider obvious alternative explanations in determining whether a plaintiff has met the plausibility standard. *See Twombly*, 550 U.S. at 566-68. As the second prong suggests, Plaintiffs must establish "purposeful discrimination." *Gen.*

*Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 391 (1982). Moreover, the United States Supreme Court has confirmed that it is insufficient for a plaintiff to allege that the defendant was motivated by racial discrimination in denying a plaintiff an opportunity to contract. Rather, under Section 1981, a plaintiff must also present facts showing that the defendant's discrimination was the "but-for" cause of the plaintiff's injury. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media,* 140 S. Ct. 1009, 1014-15 (2020).

### A. The Complaint Fails to Plausibly Plead an Intent to Discriminate on the Basis of Race.

Legacy's claims should be dismissed because Legacy fails to plausibly plead that AT&T intentionally discriminated against Legacy on the basis of race as required by the second element of a Section 1981 claim. *See Bellows*, 118 F.3d at 274. With respect to this element, "plaintiff must allege some facts that demonstrate [his] race was **the** reason for defendant's actions and cannot merely invoke his race in the course of a claim's narrative." *Doe #1 v. Am. Fed'n of Gov't Employees*, 554 F. Supp. 3d 75, 102 (D.D.C. 2021) (internal quotation marks omitted).

A plaintiff can raise an inference of discrimination to support the second element of a Section 1981 claim by pleading sufficient facts showing (1) the ultimate decision-maker made discriminatory statements, or (2) the defendant treated the plaintiff differently from similarly situated companies who are not part of the protected class. *See Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 387 (5th Cir. 2017); *see also Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021). However, a bare assertion that plaintiff is "similarly situated to

other[s] . . . is just a legal conclusion—and a legal conclusion is never enough." *Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019) (internal quotation marks omitted); *Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018) ("An allegation that others are treated differently, without more, is merely a legal conclusion that we are not required to credit.").[15]; *see also Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1015 (8th Cir. 2013) (plaintiff's assertion that she was discharged "under circumstances [that] similarly situated men were not," imports legal language couched as a factual allegation and "fails to raise a right to relief above the speculative level").

Legacy's Complaint contains no factual allegations that, taken as true, would support an intent to discriminate on the basis of Legacy's race, let alone that racism was the but-for cause of the challenged business outcomes. Instead, Legacy has peppered its Complaint with generic allegations of "systemic" and "institutionalized" racism without any supporting facts. Complaint ¶¶7, 10, 14, 76, 81. The Complaint is also replete with bald allegations that Legacy was similarly situated to white-owned businesses that were treated more favorably, but these allegations are too conclusory to permit a reasonable inference of discriminatory intent. *See Bekkem*, 915 F.3d at 1275; *Dyson,* 892 F.3d at 685.

---

[15] *See also Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1015 (8th Cir. 2013) (concluding that "[plaintiff's] conclusory assertion that she was discharged under circumstances similarly situated men were not imports legal language couched as a factual allegation and fails to raise a right to relief above the speculative level").

As further explained below, the Court should dismiss Legacy's claims related to each transaction because Legacy has not plausibly pled a racial motive for AT&T's actions, let alone but-for causation.[16]

### 1. <u>Cricket Wireless</u>

Legacy fails to plausibly plead that AT&T had any intent to discriminate in connection with Cricket Wireless.

**First**, Legacy does not allege that a similarly situated non-minority entity made an unsolicited bid to buy Cricket Wireless and was treated more favorably. *See Bolden v. Amer. Airlines, Inc.*, No. 4:21-cv-00603-P, 2021 WL 3419682 *4 (N.D. Tex. 2021) (finding no circumstantial evidence when plaintiff does not specify how a similarly situated non-minority was allegedly treated).[17] In fact, Legacy does not allege that AT&T ever offered Cricket for sale, that another company made an unsolicited bid to buy Cricket, that any other potential purchasing entity was similarly situated to Legacy, that it made an offer that was less favorable than Legacy's, or that AT&T accepted a less favorable offer. Nor could it, of course, because AT&T still owns Cricket Wireless today.[18] This fact alone is fatal to Legacy's Cricket Wireless claim (and, in fact, renders the claim arguably frivolous).

---

[16] At the motion to dismiss stage, courts consider each claim separately to determine whether the plaintiff has met its pleading burden with respect to each claim. *Waller v. Escamilla*, No. H-22-1156, 2022 WL 2479161, at *4 (S.D. Tex. Jul 6, 2022) (holding each instance of discrimination individually insufficient to state a claim); *see also Martinez v. Katy Indep. Sch. Dist.*, No. H–11–547, 2012 WL 6737497, at *7-8 (S.D. Tex. Dec. 7, 2012) (assessing each instance of alleged discrimination separately in an employment discrimination claim under Section 1981).

[17] *See also Pena v. Dallas Police Ass'n*, No. 3:22-CV-0987-N-BH, 2023 WL 2144296, at *7 (N.D. Tex. Jan. 17, 2023), *r. & r. adopted,* 2023 WL 2142973 (N.D. Tex. Feb. 21, 2023) (dismissing Section 1981 claim pursuant to Rule 12(b)(6) where the complaint failed to allege facts showing similarly situated non-minority were more favorably treated under nearly identical circumstances).

[18] Ex. A-6, App. 1737 (10-K for fiscal year ended 12/31/22 at Exhibit 21).

**Second,** Legacy does not allege that a decision-maker at AT&T made any racially discriminatory statement to Legacy. The Fifth Circuit requires that, to be probative, allegedly discriminatory statements must be made by the relevant decision-maker and proximate to the adverse decision. *Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) (noting that stray remarks are insufficient to establish discrimination absent evidence that the remarks were related to, or made proximate in time to, the adverse decision).[19] For example, in *Silva v. Spring Branch Indep. Sch. Dist.*, the district court held that "stray remarks" unrelated to the adverse decision and made by a variety of people, only one of whom appeared to have played a role in the adverse action, could not support an inference of discriminatory intent. No. CV H-16-545, 2017 WL 818593, at *16 (S.D. Tex. Jan. 24, 2017). Accordingly, the court dismissed the plaintiff's discrimination claims for failing to plead sufficient facts to raise an inference of discrimination. *Id.*

Here, while Legacy alleges that McGaw told Taylor "he had no confidence that an African American firm like Legacy could successfully raise the capital necessary to acquire billion-dollar assets," Legacy does not plead that McGaw had any decision-making authority. In fact, Legacy pleads the opposite, alleging that a **different** person, AT&T's then-CEO Stephenson, rejected Legacy's bid. Legacy pleads no **facts**

---

[19] *See also Pathria v. Serwer*, 599 F. App'x 176, 177 (5th Cir. 2015) (upholding dismissal on 12(b)(6) grounds because a single stray remark was insufficient to support that the decision was motivated by discriminatory intent, as required for 12(b)(6) purposes); *Walls v. Panetta*, No. 5:12-CV-52, 2012 WL 6086226, at *3 (E.D. Tex. Dec. 6, 2012) (noting "singular pleaded fact of a stray remark does not raise a right to relief as required to avoid dismissal pursuant to *Twombly* and *Iqbal*"); *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, No. 21-CV-695 (KMK), 2023 WL 2691622, at *20 (S.D.N.Y. Mar. 29, 2023) (finding comment in complaint to be stray remark and noting "stray remarks unrelated to the decision process are rarely give great weight particularly if they were made temporally remote from the date of the decision").

suggesting Stephenson exhibited any racial animus or conduct. Legacy also does not plead any specific facts connecting McGaw's alleged statement to AT&T's alleged rejection of Legacy's bid one month later. Complaint ¶ 42. Instead, Legacy asserts that Legacy made the bid, AT&T considered the bid for a month, and while the bid was ultimately rejected by someone other than McGaw, AT&T gave Legacy the opportunity to purchase other assets. Complaint ¶¶ 34-42.

### 2.   The 88 Retail Stores

Legacy fails to plead sufficient facts showing discriminatory intent related to the sale of AT&T's 88 Retail Stores. While Legacy alleges that Cass questioned Legacy's ability to secure funding and close the transaction, Legacy makes no <u>factual</u> connection between Cass's alleged remarks and the alleged reason that Legacy made the decision to withdraw from negotiations (that is, Legacy was not comfortable purchasing the stores without the right to retain store employees). Complaint ¶ 55 – 59. With that said, the Complaint plainly asserts that **Legacy**—not AT&T—could not complete the acquisition. Complaint ¶ 59. The Complaint further asserts that despite Cass's alleged statement, Legacy told AT&T that it would move forward with the transaction and that "it could and would close." Complaint ¶ 54. Legacy fails to show that the alleged stray remark from Cass was connected to Legacy's inability to close the transaction, or that Cass had any involvement in setting the closing conditions that Legacy refused or failed to satisfy. *Pathria*, 599 F. App'x at 177-78 (holding isolated comment, remote in time from the decision at issue did not support discriminatory intent; 12(b)(6) dismissal upheld).

The Complaint also fails to sufficiently plead that Legacy was similarly situated to Blue Link, the company that allegedly purchased some or all of the 88 Retail Stores after Legacy backed out of the deal, or that Blue Link was treated more favorably. Complaint ¶ 64. *See Bolden*, No. 4:21-cv-00603-P 2021 WL 3419682 *4; *see also Calvin v. Harrington*, No. 3:19-CV-02294-G-BT, 2021 WL 932051, at *7 (N.D. Tex. Feb. 22, 2021). Indeed, the Complaint pleads no details regarding the parties' comparative business qualifications or financial means, their respective abilities to operate the types of retail stores at issue, or any specific facts about Blue Link's offer to buy the 88 Retail Stores, including that Legacy's bid was equal to or more favorable to AT&T.

Further, Legacy's attempt to demonstrate that Blue Link was treated more favorably because it was not forced to take possession of the 88 Retail Stores during the holiday season also falls short. Complaint ¶ 64. It stands to reason that after Legacy backed out of the deal during the holiday season, AT&T would need time to find a new buyer and the ultimate purchase would not occur until later. As *Twombly* held, courts may consider obvious alternative explanations in determining whether a plaintiff has met the plausibility standard. *See Twombly*, 550 U.S. at 566-68.

### 3. Puerto Rico Wireless Division

Likewise, Legacy provides no detail to support any discriminatory intent in relation to the Puerto Rico Wireless Division transaction. **First**, there is no indication in the Complaint that there was any racial statement made to Legacy related to this asset. **Second,** there is no allegation in the Complaint to plausibly suggest Liberty Media, the company that purchased the Puerto Rico Wireless Division from AT&T, is

similarly situated to Legacy. Like Blue Link, the Court can infer from the Complaint that Legacy is **not** similarly situated to Liberty Media based on what Legacy does not allege. For example, Legacy surely knows or should have known from public filings that Liberty Media is the largest wireless company in Puerto Rico.[20] By contrast, the Complaint is conspicuously silent about Legacy's qualifications to own and operate a wireless business in Puerto Rico, let alone alleges any experience Legacy has in the telecommunications industry generally.

The Complaint also lacks any factual allegations that Liberty Media purchased the Puerto Rico Wireless Division on less favorable terms than Legacy would have offered. Complaint ¶¶ 66, 67. This alone is fatal to Legacy's claim. *See Pena*, 2023 WL 2144296, at *7 (noting complaint must show facts showing similarly situated non-minority were more favorably treated under nearly identical circumstances). For example, Legacy fails to allege that (1) it submitted a bid for the asset, (2) its bid would have been rejected, or (3) its bid would have been more favorable that the terms that Liberty Media offered. *See T & S Serv. Assoc., Inc. v. Crenson*, 666 F.2d 722, 725 (1st Cir. 1981) (requiring that a Section 1981 plaintiff show not only that its bid met required specifications, but also that its bid was more advantageous than bid ultimately awarded).

### 4.   DIRECTV and Other Non-Core Assets

Legacy's claims related to DIRECTV and the "10 other divested assets" similarly fail to identify any facts that AT&T personnel made any racial statements

---

[20] Ex. A-8, App. 1822 (AT&T 8-K published 10/28/2019 at Item 8.01); Ex. A-2, App. 325 (Liberty Latin America Ltd. 10-K for fiscal year ended 12/31/2019 at I-5, II-5).

in connection with these transactions or treated a similarly situated non-minority-owned business more favorably during the bidding or contracting process. *See id.* at ¶¶38-43, 44-47, 70-73.

Legacy's conclusory assertion that AT&T sold the assets "to white-owned companies that were less qualified and on more favorable terms" is insufficient "to indicate that racial or other discrimination was the plausible, rather than just the possible reason" that AT&T did not contract with Legacy to purchase DIRECTV and any other alleged Non-Core Assets. *Bekkem*, 915 F.3d at 1275; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotation marks omitted). Wholly absent from the Complaint are any factual allegations that (1) Legacy submitted bids for these assets, (2) the terms of such bids, or even the terms that Legacy was willing or able to offer if it had bid, (3) AT&T rejected Legacy's bids, (4) AT&T accepted other offers from similarly situated companies that were less favorable, (5) Legacy had any of the qualifications and industry experience necessary to purchase the assets, or (6) but for any hypothetical racially-motivated conduct, the outcome would have been different.

In short, the allegations in the Complaint merely recite the elements of the claim, which cannot as a matter of law support a plausible inference of intentional discrimination relating to any of the identified Non-Core Assets. *Nixon El v. Gen. Motors Co.*, No. 4:20-CV-471-A, 2020 WL 3848099, at *1 (N.D. Tex. July 8, 2020); *see also Vinson v. City of Charlotte, N. Carolina,* No. 306CV353-MU, 2007 WL 1198940,

at *1 (W.D.N.C. Apr. 19, 2007). These kitchen-sink Section 1981 claims should therefore be dismissed.

**B.     Legacy Fails to Plausibly Plead a Contractual Right Related to the Non-Core Assets**

Legacy's claims concerning Cricket Wireless and the Non-Core Assets fail for the separate, additional reason that the Complaint does not identify a specific contract or contractual right of which AT&T deprived Legacy; as a result, the Complaint fails the third element of a Section 1981 claim. "Section 1981 does not provide a general cause of action for race discrimination." *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003). "Rather, it prohibits intentional race discrimination with respect to certain enumerated activities." *Id.* At issue here is Legacy's ability "to make and enforce contracts" on nondiscriminatory terms. 42 U.S.C. § 1981(a). To satisfy the third element, a plaintiff does not need to allege an existing contract, but it must plead facts that plausibly demonstrate discrimination regarding a prospective contract and show that it was "actually prevented, and not merely deterred" by the defendant. *Arguello*, 330 F.3d at 359.

Again, AT&T never sold Cricket Wireless, Legacy does not allege otherwise, and there is no inference that can be drawn from the Complaint that it ever was interested in doing so. In these circumstances, neither Section 1981 nor the courts' interpretation of this statute can support a claim. Any other result would be nonsensical and lead to alleged violations that could never be a but-for cause of any injury. Likewise, Legacy has not met its pleading burden on the third element concerning the Non-Core Assets. For example, the Complaint does not allege that

Legacy submitted bids for the assets or in any way demonstrated to AT&T that it was qualified to purchase the assets. Instead, Legacy alleges that it "expressed a willingness to bid on **any** of AT&T's divested assets." Complaint ¶ 67.

But courts have consistently held a "general interest" is insufficient to state a Section 1981 claim. *See McCrea v. Saks, Inc.*, No. CIV. A. 00-CV-1936, 2000 WL 1912726, at *3 (E.D. Pa. Dec. 22, 2000) (granting defendant's motion to dismiss and finding that plaintiff had demonstrated nothing more than a "general interest" in the item to purchase and stating "[a] claim under Section 1981 must allege the actual loss of a contract interest, not merely the possible loss of future contract opportunities."); *see also Sterling v. Kazmierczak*, 983 F. Supp. 1186, 1191 (N.D. Ill. 1997) (same). In fact, the plaintiff must sufficiently allege that he attempted to make a purchase. *Id.*; *see also Jacobs v. Ballard Expl. Corp.,* No. 1:18-CV-00469, 2019 WL 1715830, at *4 (E.D. Tex. Jan. 17, 2019) (dismissing Section 1981 claim where plaintiff could not identify a specific contract or contractual right of which defendant deprived her).

To meet its burden in this case, and move from "general interest" to actual attempt to purchase, Legacy would have to show that it submitted bids to AT&T for the Non-Core Assets. For example, in *Rowe Ent. Inc. v. William Morris Agency, Inc.*, the district court dismissed the plaintiffs' Section 1981 claims at the summary judgment stage where the plaintiffs acknowledged they did not actually submit bids to serve as concert promotors for the defendants. *Rowe Ent. Inc.*, 2005 WL 22833, at *30 (S.D.N.Y. Jan. 5, 2005). The court noted that even if bids had been submitted,

plaintiffs had not shown that they had the capital, credit record, or financial resources. *Id.* Here, Legacy does not even allege it submitted bids for the Non-Core Assets, or that it was qualified to purchase the assets, and that any speculative, hypothetical bid would have been superior to other submitted bids. This is fatal to its claims. *See id.* at *34 ("Plaintiffs' lack of bids precluded the possibility of [defendant] taking any action, in concert or otherwise, to interfere with any potential contractual relationship in connection with the Maxwell tour in violation § 1981.").

Because Legacy fails to plead sufficient facts that AT&T actually prevented Legacy from making a contract, Legacy's claims related to Cricket Wireless and the Non-Core Assets are fatally flawed and should be dismissed.

## III. Legacy's Cricket Wireless and Puerto Rico Wireless Division Claims Are Barred by the Applicable Statute of Limitations.

Legacy's Cricket Wireless and Puerto Rico Wireless claims are untimely and barred by the applicable two-year statute of limitations.[21] *See Byers,* 209 F.3d at 424. Legacy filed its Complaint on May 4, 2023. However, Legacy's Cricket claims expired in May 2021 and its Puerto Rico claims expired in October 2022.

---

[21] Two different statutes of limitations can apply depending on the nature of a Section 1981 claim. In Texas, a two-year statute of limitations applies for claims that could have been brought prior to the 1991 amendments to Section 1981. *See Nicholson v. A.H.D. Houston, Inc.*, No. 4:21-CV-02624, 2022 WL 4543201, at *4 (S.D. Tex. Sept. 28, 2022). A four-year statute of limitations applies for claims that were only made possible by the 1991 statutory changes. *Id.* Prior to 1991, Section 1981 covered claims related to the making and formation of a contract, but not claims for discriminatory conduct occurring after the formation of a contract. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371-73 (2004). Congress amended Section 1981 in 1991 to protect against harassing conduct that occurred after the formation of the contract. *Id.* Employment claims for hostile work environment, wrongful termination, and failure to promote arise under the 1991 amendments and are subject to a four-year statute of limitations. *Id.* at 373. Legacy claims that AT&T violated its rights under Section 1981 in refusing to enter a contract, a claim that could have been brought prior to the 1991 amendments to Section 1981. As a result, the two-year statute of limitations applies. *Byers,* 209 F.3d at 424.

The statute of limitations begins (and the claim accrues) the moment Legacy either: (1) became aware that it had suffered an injury, or (2) had sufficient information to know that it had been injured. *Spotts v. U.S.*, 613 F.3d 559, 574 (5th Cir. 2010); *see Nicholson v. A.H.D. Houston, Inc.*, No. 4:21-CV-02624, 2022 WL 4543201, at *4 (S.D. Tex. Sept. 28, 2022) ("Accrual of a claim under § 1981 commences when the plaintiff first has actual knowledge of the violation or has knowledge of facts that, in the exercise of due diligence, would have led to actual knowledge."). For claims of discrimination, a plaintiff's claim "accrues at the moment [it] believes (or has reason to believe) that [it] is a victim of discrimination." *Ramirez v. City of San Antonio*, 312 F.3d 178, 182 (5th Cir. 2002); *see Nicholson,* 2022 WL 4543201, at *4. Dismissal is appropriate when the factual allegations and dates alleged in the complaint show that a claim accrued outside of the limitations period. *See Whitehead v. Chevron USA, Inc.,* No. CIV.A. 3:03-CV-0956R, 2004 WL 594094, at *1 (N.D. Tex. Mar. 24, 2004). Since this case was filed on May 4, 2023, all of Legacy's claims accruing prior to May 4, 2021, are barred by the statute of limitations.

Legacy's claims related to Cricket Wireless and the Puerto Rico Wireless Division are barred either based on the dates alleged in the Complaint or because Legacy had reason to know based on AT&T's public filings that its alleged injury had occurred.

As to Cricket Wireless, the Complaint alleges that Legacy submitted a bid for the asset on March 25, 2019, McGaw told Taylor that he did not have confidence that Legacy could successfully raise capital, and then approximately one month later,

AT&T rejected the bid. Complaint ¶¶ 34, 35, 38, 42. Taking Legacy's allegations as true, Legacy knew or should have known that it had suffered injury from any alleged discrimination by May 2019, more than two years before it filed its Complaint.

As to the Puerto Rico Wireless Division, Legacy knew or should have known from public filings that AT&T entered an agreement to sell the asset in October 2019. *See* Ex. A-1, App. 65 (AT&T 10-K for fiscal year ended 12/31/2019 at 91); Ex. A-2, App. 325 (Liberty Latin America Ltd. 10-K for fiscal year ended 12/31/2019 at II-5). To the extent that Legacy asserts that it was entitled to purchase the Puerto Rico Wireless Division and was deprived of the opportunity to do so by some sort of racial discrimination, Legacy was on notice that AT&T sold the asset to another buyer— and thus allegedly suffered injury—over three years before filing its Complaint.

As to Legacy's claims related to all other AT&T Non-Core Assets[22] and the 88 Retail Stores, Legacy conveniently provides no dates as to when any of the Non-Core Assets were allegedly offered for sale, when the 88 Retail Stores or Non-Core Assets were actually sold, or when or if Legacy submitted any bid(s) for the Non-Core Assets. Complaint ¶¶ 44-47, 71. The motive here is clear: because Legacy knows the timeframes at issue would bar any claim for relief under Section 1981, its Complaint strategically omits these dates, hoping to salvage its claim through artful pleading.[23]

---

[22] Legacy briefly references the sale of a group of 31 data centers as part of its cursory list of "Non-Core Assets." *See* Complaint ¶ 71. AT&T's public filings show that data centers were sold to Brookfield Infrastructure Partners in December of 2018, which is more than three years prior to the filing of Legacy's Complaint. Ex. A-1, App. 65 (10-K for fiscal year ended 12/31/2019 at 91).

[23] To the extent Legacy's 88 Retail Store claims somehow survive this Motion, AT&T intends to limit initial discovery to statute of limitations issues related to these claims.

## CONCLUSION AND PRAYER

For the reasons set forth herein, AT&T respectfully requests that the Court grant this motion to dismiss, dismiss this case with prejudice, and grant it all other relief to which it is entitled.


Dated: July 17, 2023                                        Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

*/s/ Richard S. Krumholz*
Richard S. Krumholz
richard.krumholz@nortonrosefulbright.com
State Bar No. 00784425
Shauna J. Clark
shauna.clark@nortonrosefulbright.com
State Bar No. 00790977
Heather L. Sherrod
heather.sherrod@nortonrosefulbright.com
State Bar No. 24083836
Andrew Yeh
andrew.yeh@nortonrosefulbright.com
State Bar No. 24098645
Joseph D. Piorkowski
joey.piorkowski@nortonrosefulbright.com
State Bar No. 24091426

2200 Ross Ave., Ste. 3600
Dallas, TX 75201
Telephone: (214) 855-8061
Facsimile: (214) 855-8200

***Attorneys for Defendant AT&T Inc.***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service in compliance with Local Rule 5.1(f) are being served on July 17, 2023 with a notice of electronic filing of this Motion via the Court's CM/ECF system in compliance with Rule 5 of the Federal Rules of Civil Procedure and Local Rule 5.1.

| | |
|---|---|
| Gary Ewell | Louis R. Miller |
| David P. Blanke | David W. Schecter |
| Ewell, Brown, Blanke & Knight LLP | Kelley T. Tran |
| 111 Congress Ave., 28th Floor | Miller Barondess, LLP |
| Austin, TX 78701 | 2121 Avenue of the Stars, Ste. 2600 |
| (512) 770-4030 | Los Angeles, CA 90067 |
| gewell@ebbklaw.com | (310) 552-4400 |
| dblanke@ebbklaw.com | smiller@millerbarondess.com |
| | dschecter@millerbarondess.com |
| | ktran@millerbarondess.com |

*/s/ Richard S. Krumholz*
Richard S. Krumholz